ELECTRONICALLY FILED
Pulaski County Circuit Court
Terri Hollingsworth, Circuit/County Clerk
2024-Apr-23 12:02:39
60CV-24-3257
C06D06 : 21 Pages

## IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS
## CIVIL DIVISION

**JORDANA GARDNER, Individually and on behalf of themselves as well
all others similarly-situated employees**                    **PLAINTIFFS**

**vs.**                  **CASE NO. _____**

**DR. ALONZO WILLIAMS, SR.; SUSAN WILLIAMS**          **DEFENDANTS**
**SUZETTE SIEGLER; SELMA KEEFER; COVENANT**
**SURGICAL PARTNERS, INC., d/b/a COVENANT PHYSICIAN**
**PARTNERS; ARKANSAS DIAGNOSTIC CENTER, P.A. JOHN DOES 1-10.**

### CLASS ACTION COMPLAINT

COMES the Plaintiff, **JORDANA GARDNER**, each Individually and on behalf of herself

and all others similarly-situated employees, (Plaintiffs), by and through counsel, Luther Sutter and

Lucien Gillham, of **SUTTER & GILLHAM, P.L.L.C.;** who respectfully submits this Complaint

against Defendants, **DR. ALONZO WILLIAMS, SR.; SUSAN WILLIAMS; SUZETTE**

**SIEGLER; SELMA KEEFER; COVENANT SURGICAL PARTNERS, INC. D/B/A**

**COVENANT PHYSICIAN PARTNERS; ARKANSAS DIAGNOSTIC CENTER, P.A.;**

**AND, JOHN DOE ENTITIES 1-10** (collectively referred to as "Defendants"). Plaintiffs'

allegations are based upon personal knowledge, information, and belief. To the best of Plaintiffs'

knowledge, information, and belief, the allegations herein not based on personal knowledge are

likely to have evidentiary support after a reasonable opportunity for further investigation,

discovery, and analysis.

### I.

### PRELIMINARY STATEMENT

1.      This lawsuit seeks to redress systemic, intentional, and willful abuses of power in

the workplace, in healthcare, and in society by and for the benefit of a corrupt and powerful man—

Dr. Alonzo D. Williams, Sr.—and by his entities, agents, and coconspirators.

**EXHIBIT 1**

2.      Plaintiff, Gardner, brings each an individual claim for sex and race discrimination under the Arkansas Civil Rights Act, the Equal Pay Act, and the Arkansas Minimum Wage Act. Plaintiff, Gardner, also brings a taxpayer class action against Defendants for an illegal exaction pursuant to the Arkansas Constitution. No Federal claims are brought.

## II.
## PARTIES, JURISDICTION, AND VENUE

3.      Plaintiff, Jordana Gardner, is a resident of Pulaski County, Arkansas.

4.      Defendant, Dr. Alonzo Williams, is a resident of Pulaski County, Arkansas.

5.      Defendant, Susan Williams, is a resident of Pulaski County, Arkansas.

6.      Defendant, Suzette Siegler, is a resident of Lonoke County, Arkansas.

7.      Defendant, Selma Keefer, is a resident of Faulkner County, Arkansas.

8.      Defendant, Covenant Surgical Partners, Inc. d/b/a Covenant Physician Partners (hereinafter "CPP"), is a foreign corporation operating in Pulaski County, Arkansas. CPP's Registered Agent for service of process is *National Registered Agents, Inc.*, which is located at 320 South Izard Street, Little Rock, AR 72201.

9.      Defendant, Arkansas Diagnostic Center, P.A., (hereinafter "ADC"), is a for-profit business located in Pulaski County, Arkansas. ADC's Registered Agent for service of process is *Alonzo D. Williams*, who is located at 8908 Kanis Road, Little Rock, AR 72205.

10.     This Court has subject matter jurisdiction.

11.     Plaintiff was employed by, and performed work for Defendants, in Pulaski County. Therefore, venue is proper in this County.

12.     Under the AMWA, Plaintiff, Gardner, and others are employees of Dr. Alonzo Williams, Suzette Siegler, Selma Keefer, CPP, and ADC (hereinafter "Joint Employer Defendants").

13.    The Joint Employer Defendants had the ability to set the terms, conditions, and privileges of Plaintiffs' employment.

14.    Upon information and belief, Dr. Williams is an officer and member of CPP.

15.    Upon information and belief, Dr. Williams is an officer and member of ADC.

16.    At all relevant times, Dr. Williams had operational control over CPP and ADC.

17.    At all relevant times, Dr. Williams had the power to hire and fire employees of CPP and ADC in Arkansas.

18.    At all relevant times, Dr. Williams supervised and set wages and wage policies for employees of CPP and ADC.

19.    At all relevant times, Suzette Siegler and Selma Keefer had the power to hire and fire employees of CPP and ADC in Arkansas.

20.    At all relevant times, Suzette Siegler and Selma Keefer supervised and set wages and wage policies for employees of CPP and ADC.

21.    CPP does business in Arkansas, including, among other things, acting as majority member of Gastroenterology and Surgery Center of Arkansas II, LLC (hereinafter "Surgery Center") and providing management services to the Surgery Center in Little Rock.

22.    Gastroenterology and Surgery Center of Arkansas, P.A. ( hereinafter "GSC") and CPP are the only two (2) members of the Surgery Center.

23.    CPP is also the Manager of the Surgery Center under a Management Agreement that has been in place since 2009.

24.    As both a majority and controlling member of the Surgery Center and as Manager of the Surgery Center, CPP has control of all operations of the Surgery Center.

25.    The Management Services include, but are not limited to, human resources, payroll, scheduling and appointments, accounting, risk management, and management information

systems. CPP is also responsible for providing and employing all personnel and staff necessary and appropriate to operate the Surgery Center. CPP is responsible for all salary and other compensation of staff, subject to reimbursement by the Surgery Center.

26.     GSC is the only member of Surgery Center that provides physician services at the Surgery Center. GSC's owner, Dr. Alonzo Williams, is the Medical Director of the Surgery Center. Dr. Williams' medical practice, ADC, is a long-time tenant and medical provider at the Surgery Center.

27.     CPP is the Surgery Center's exclusive agent to bill and collect all fees and other amounts due to the Surgery Center. CPP receives a set fee of 7% of all monies collected by the Surgery Center for the totality of its Management Services under the Management Agreement. Covenant also receives reimbursement of reasonable out-of-pocket expenses, as well as reimbursement for all compensation paid to Surgery Center staff.

28.     On November 30, 2023, Dr. Williams—on behalf of GSC, the Surgery Center, and ADC, filed a lawsuit against CPP alleging, among other things, that: (1) CPP engaged in racial discrimination against black employees; (2) wasted time dealing with anonymous complaints made to the Arkansas State Medical Board against Dr. Williams and others; and, (3) "engaged in unlawful pay and employment disparities as controlling member of the Surgery Center." *See* 60CV-23-9112.

29.     The Joint Employer Defendants are "employers" within the meaning of the AMWA.

30.     At all times relevant, the Joint Employer Defendants operated as one employer and conducted business operations out of and within a common facility. Defendants shared common employment practices and employees.

31.     The Joint Employer Defendants have unified operational control and management,

as well control over employees, including shared power to supervise, hire and fire, establish wages and wage policies, and set schedules for their employees through unified management.

32.     As a result of this unified operational control and management, through shared employees and ownership with the authority to establish wages and wage policy, the Joint Employer Defendants operated as a single enterprise.

33.     CPP and ADC's annual gross volume of sales made, or the business done, exceeded $500,000.00.

34.     During each of the three (3) years preceding the filing of this Complaint, the Joint Employer Defendants employed at least two (2) individuals who were engaged in interstate commerce or had employees handling, selling, or otherwise working on goods or materials that had been moved in or produced for commerce by any person, such as medical supplies and equipment, medications, computers, and office supplies.

## III.
## FACTUAL ALLEGATIONS

35.     Plaintiff, Gardner, is a courageous whistleblower and victim of Dr. Williams and the other co-conspirators named as Defendants in this action, brings this suit to redress her own injuries and those of other similarly situated employees and tax payers, and to stop Dr. Williams from harming others—employees, patients, and the general public. Plaintiff, Gardner, can no longer stay quiet about the systematic abuses of power that they personally witnessed, observed, and suffered at the hands of Dr. Williams and his co-Defendants, and she, along with others similarly situated, seek justice in the broadest and most liberal construction of that term.

36.     Plaintiff, Gardner, was employed by the Joint Employer Defendants as a Medical Assistant from approximately July 9, 2007 until her constructive discharge on February 2, 2024.

37.     Plaintiff, Gardner, is a black female who is 52 years old.

5

38.     Plaintiff, Gardner, was not forced to have a quid pro quo sexual relationship with Dr. Williams.

39.     Consequently, Plaintiff, Gardner, was not paid as much as other similarly situated Medical Assistants.

40.     Plaintiff, Gardner, was discriminated against on account of sex because the only way to earn a higher wage for the Joint Employer Defendants, apparently, was to have sex with the boss—Dr. Williams.

41.     Likewise, despite having worked for some or all of the Joint Employer Defendants for nearly 17 years (and certainly all of them for the three (3) years preceding this lawsuit), Plaintiff, Gardner's, hourly rate of pay was only $21.32 per hour.  Bonuses were paid and the amount was dependent on whether or not you were sleeping with the Defendant.

42.     In or about October 2023, Dr. Williams went to Plaintiff, Gardner, and asked her to write her hourly rate of pay on a post-it note while promising to provide her a wage increase.

43.     Dr. Williams singled out two (2) other black employees—Shantelle Brown and Chiquita Ross—and asked them to similarly write their rates of pay on post-it notes. Dr. Williams also promised to increase the wages of the other black female employees.

44.     But, Dr. Williams did not seek to increase their rates of pay. Instead, Dr. Williams, upon information and belief, used that information to file his lawsuit (Case No. 60CV-23-9112) involving a dispute with his business partners.

45.     Other similarly situated white Medical Assistants, who had less training, education, and experience, received a higher hourly rate of pay.

46.     Likewise, unlike Plaintiff, Gardner, other white employees, who were paid cash bonuses in connection with their employment, the Joint Employer Defendants never paid a cash bonus to Plaintiff, Gardner.

47.     The Joint Employer Defendants never paid a cash bonus to Plaintiff, Gardner, because she did not have sex with the boss and because she is black.

48.     Likewise, Plaintiff, Gardner, routinely performed off-the-clock work for the Joint Employer Defendants.

49.     Plaintiff, Gardner, suffered, or was permitted to work, off-the-clock.

50.     During the workday, Plaintiff, Gardner, was forced to work during unpaid meal breaks and restroom breaks.

51.     The Joint Employer Defendants routinely interrupted Plaintiff, Gardner's, unpaid meal periods and required her to perform work without compensation.

52.     If Plaintiff, Gardner, claimed overtime, Defendant, Siegler, on behalf of all Joint Employer Defendants, almost always removed that time from Plaintiff Gardner's timecard.

53.     The Joint Employer Defendants told Plaintiff and other similarly situated hourly workers that they "can not [sic] be in overtime" and to "[p]unch out before" incurring same.

54.     The Joint Employer Defendants "chewed out Defendant, Siegler, for paying overtime.

55.     Defendant, Siegler, on behalf of the Joint Employer Defendants, told Plaintiff that there "CANNOT [be] overtime especially when [her] surgery center is not that busy" because she "just ha[s] corporate on [her] butt about dollars."

56.     Plaintiff, Gardner, routinely worked over forty (40) hours per week.

57.     The Joint Employer Defendants systematically failed and refused to pay Plaintiff, Gardner, for her overtime.

58.     Over the course of time, Plaintiff, Gardner, became concerned with the Joint Employer Defendants' personnel and patient practices.

59.     When Plaintiff, Gardner, expressed her concern to her superiors and coworkers, she was transferred to the post-op area of the Joint Employer Defendants' clinic, which she was required to perform the work of two people.

60.     Plaintiff is an Arkansas taxpayer. Plaintiff alleges a "public funds" illegal exaction suit on behalf of themselves and all similarly situated taxpayers.

62.     The Arkansas Supreme Court has stated: "citizens have standing to bring a public-funds case because they have a vested interest in ensuring that the tax money they have contributed to the state treasury is lawfully spent. Thus, the only standing requirements we have imposed in public-funds cases is that the Plaintiff be a citizen and that he, or she, have contributed tax money to the general treasury." Nelson v. Berry Petroleum Co., 242 Ark. 273, 413 S.W.2d 46 (1967).

63.     A "public funds" illegal exaction occurs where "public funds generated from tax dollars are being misapplied or illegally spent." Chapman v. Bevilacqua, 344 Ark. 262, 42 S.W.3d 378 (2001).

64.     Dr. Williams, CPP, and ADC, are providers are healthcare services that operate in Arkansas.

65.     Dr. Williams, CPP, and ADC, received Millions of Dollars in funds generated by Arkansas taxpayers which that were distributed to them through the Department of Human Services state Medicaid programs. These funds were not federal funds, but funds of the State of Arkansas.

66.     The Arkansas Medicaid Program receives thirty percent (30%) of its funding from tax revenues generated by Plaintiff.

67.     Dr. Williams, CPP, and ADC, through fraudulent billing practices, acquired funds from the Arkansas Medicaid Program.

68.     A significant portion of the funds received by Dr. Williams, CPP, and ADC, from the State of Arkansas, were acquired using unlawful means and were utilized in a manner other than that represented by Dr. Williams, CPP, and ADC.

69.     Dr. Williams, CPP, and ADC, along with other Defendants, such as Selma Keefer and Suzette Siegler, acting in the course and scope of their employment, devised a plan by which they defrauded the Medicaid program. Specifically, Defendants:

a.)     Routinely and systematically billed Medicaid for office visits that never occurred;

b.)     Routinely and systematically billed Medicaid for medical services that were never provided; and,

c.)     Routinely and systematically performed unnecessary procedures for the purpose of fraudulently billing Medicaid.

70.     Plaintiff, Gardner, did a lot of work for Defendants procedures.

71.     The Joint Employer Defendants specifically trained his staff to "code high."

72.     In the vast majority of cases where an esophagogastoduodenoscopy, (hereinafter "EGD"), procedure was performed by Dr. Williams, he did not hold an office visit with the patient, including Medicaid patients; however, the Joint Employer Defendants nevertheless billed Medicaid for an office visit.

73.     In the vast majority of cases where a colonoscopy was performed by Dr. Williams, the Joint Employer Defendants did not hold an office visit with the patient, including Medicaid patients; however, the Joint Employer Defendants nevertheless billed Medicaid for an office visit.

74.     Even if an office visit did occur with Defendant, Dr. Williams, the Joint Employer Defendants billed in excess of the actual time spent with a patient, using code 9912.

75.     The Joint Employer Defendants trained, directed, and required his staff to perform extensive charting for Dr. Williams, including coding charts, writing plans of care, and case

impressions. The Joint Employer Defendants required Plaintiff, Gardner, to perform this work using Dr. Williams's login credentials. The Joint Employer Defendants billed Medicaid for Plaintiff, Gardner's, charting work as though Dr. Williams performed the work.

76.     Likewise, when Dr. Williams performed EGD procedures, he systematically dilated the patient's esophagus even when dilation was unnecessary for the procedure, for the sole and singular purpose of billing Medicaid.

77.     Patient charts that have "60" listed for dilation was the code used when dilation was not necessary but was nevertheless billed.

78.     In some cases, patients were billed for medications that were never supplied. For instance, for certain patients, Defendant, Dr. Williams, injected them with saline solution but nevertheless billed for the cost of an anesthetic.

79.     The Joint Employer Defendants also billed Medicaid when services were provided by someone not qualified to perform the work. For instance, Medical Assistants employed by the Joint Employer Defendants routinely administered pain shots to Medicaid and other patients.

80.     Medical Assistants are not qualified to administer pain shots.

81.     The Joint Employer Defendants billed Medicaid for the Medical Assistants' services as though they were performed by a provider.

82.     Staff, who were not physicians, performed all of Dr. Williams's coding, wrote impressions and case plans, and other similar work that Dr. Williams, as the physician, was required to perform.

83.     Staff was required to work on stuff with no prior experience, education, or training in coding charts, writing impressions, or creating case plans, and so they had no idea what they were doing; instead, they were simply told to "code high," and so they did as instructed.

84.     Plaintiff, Gardner, is aware of the Joint Employer Defendants' practices.

85. The Joint Employer Defendants, at Dr. Williams's direction, billed Medicaid patients for services never performed.

86. The Joint Employer Defendants, at Dr. Williams's direction, billed Medicaid patients for services that were not medically necessary.

87. The Joint Employer Defendants, at Dr. Williams's direction, billed Medicaid patients for office visits that never occurred. When a patient was scheduled for an EGD or colonoscopy, in 90% of cases, no office visit occurred; however, the Joint Employer Defendants billed Medicaid for both a procedure and an office visit.

88. For purposes of complying with medical privacy requirements, Plaintiff can identify the specific patients who were billed for services never rendered or otherwise necessary were by initials only: CB, JP, LB, MK, and VS, among many, many, many others.

89. After Plaintiff Gardner left, Dr. Williams's sanitation practices were not appropriate. Because he was performing so many procedures, he did not have sufficient time to properly clean all scopes. At some point, the Arkansas Department of Health raised an issue. It was simply impossible to properly sterilize our equipment in line with the high patient volume. They used approximately 3000 pumps a day. There is no way to properly sterilize that equipment.

90. Dr. Williams gave cash bonuses if the business "hit their number"—scheduling at least 90 procedures in three (3) days. Dr. Williams also once directed staff to schedule 150 procedures in three days. If they "hit the number," Dr. Williams would pay medical assistants and the other two (2) nurses a $100.00 cash bonus. After some medical assistants, submitted to his quid pro quo sexual demands, Dr. Williams increased their cash bonus to $150.00 (and eventually $200.00) if they scheduled a sufficient number of procedures. Upon information and belief, the other nurses only received cash bonuses of $100.00 even after Plaintiff, Gardner, cash bonus rate increased to $200.00.

91.     Dr. Williams conditioned cooperation upon satisfying his sexual desires. This sexual discrimination and harassment has been traumatizing. As a direct and proximate cause of Defendants' actions, Plaintiffs have suffered severe mental and emotional distress. Defendants' actions have been so egregious as to warrant the imposition of punitive damages.

92.     Upon information and belief, Dr. Williams is an owner of the Entity Defendants.

93.     Upon information and belief, Dr. Williams is an executive of the Entity Defendants.

94.     The Entity Defendants' operations are interrelated, subject to common ownership and financial control, and operate from centralized labor relations and personnel.

95.     Erin Thomas, for instance, is a human resources representative for ADC. Despite that, and although Plaintiff's direct employer is CPP, Ms. Thomas performed human resources services for CPP's employees.

96.     Dr. Williams, Selma Keefer, and Suzette Siegler are "employers" under the AMWA .

97.     Dr. Williams, Selma Keefer, and Suzette Siegler are agents of the Entity Defendants under the AMWA .

98.     Dr. Williams, Selma Keefer, and Suzette Siegler had the power to set the terms, conditions, or privileges of Plaintiff's employment, in whole or in part.

99.     Dr. Williams, Selma Keefer, and Suzette Siegler had the power to set work schedules.

100.    Dr. Williams, Selma Keefer, and Suzette Siegler had the power to approve overtime.


101.    Dr. Williams, Selma Keefer, and Suzette Siegler had the power to modify timesheets.

12

102.    Dr. Williams, Selma Keefer, and Suzette Siegler worked in the interest of the Entity Defendants with respect to the management of Plaintiff's duties and work performance.

## COUNT I
## VIOLATION OF THE ARKANSAS MINIMUM WAGE ACT

103.    Plaintiff re-alleges the foregoing as if fully set out herein.

104.    Plaintiff was working in a non-exempt position, yet were not paid for hours she worked in excess of forty (40) hours per week.

105.    At all times relevant herein, each Defendant was Plaintiff's "employer" within the meaning of the AMWA, Ark. Code Ann. § 11-4-203(4).

106.    Plaintiff, with the knowledge and direction of all Defendants, consistently performed duties during her lunch hour and other scheduled breaks yet Plaintiff was not paid.

107.    Plaintiff was regularly required, as part of her job duty, to work in excess of forty (40) hours a week, with no additional compensation whatsoever.

108.    Plaintiff was the victim of willful, wanton, and calculated decision, policy or plan.

109.    Plaintiff, both individually and on behalf of herself and all others similarly situated, seeks conditional certification of their AMWA claim as a class action pursuant to the Arkansas Minimum Wage Act, Arkansas Code Annotated §§ 11-4-201, et seq., to recover compensation due her. Plaintiff requests the Court authorize notice to all potential collective action class members. Plaintiff was working in a non-exempt position, yet were not paid for the hours she worked in excess of forty (40) hours per week.

110.    An employee, like that of the Plaintiff, may bring an AMWA  action on behalf of himself and any other 'similarly situated' employees under A.C.A. § 11-4-218Specifically, the AMWA provides:

111.    Arkansas Code Annotated §§ 11-4-210 and 211 requires an employer to pay all

employees a minimum wage for all hours worked up to forty (40) hours in one (1) week and to pay one and one-half (1 ½) times regular wages for all hours worked over forty (40) hours in a week, unless an employee meets the exemption requirements of 29 U.S.C. § 213 and accompanying Department of Labor regulations.

112.    During the period relevant to this lawsuit, Defendant(s) classified Plaintiff, and all similarly situated members of the AMWA class, as non-exempt from the overtime requirements of the AMWA.

113.    Despite the entitlement of Plaintiff, and those similarly situated to minimum wage and overtime payments under the AMWA, Defendant(s) failed to pay Plaintiff and all those similarly situated an overtime rate of one and one-half (1 ½) times their regular rates of pay for all hours worked over forty (40) in each one (1) week period.

114.    Here, Plaintiff, as well as that of other employees in Arkansas like her, with the knowledge and direction of their employer, consistently performed duties during their scheduled lunch break, as well as awarded bonuses that do not represent Plaintiff's regular rate of pay. Plaintiff is regularly required as part of her job duty to work in excess of forty (40) hours a week, with no additional compensation whatsoever.  Plaintiff, and the proposed Class, are victims of a single, willful, wanton, and calculated decision, policy or plan.

115.    Plaintiff here seeks to represent all past or present employees of Defendants in Arkansas, working in positions classified as non-exempt who worked in the interest of Defendants for more than forty (40) hours in a work week, yet who have not been paid overtime within the three years preceding filing of this Complaint.

116.    Defendants have violated the AMWA by failing to pay its hourly employees in full. Specifically, Plaintiff states that Defendants use an "unlawful compensation system," knowingly

and willfully.  This is a common issue of fact that predominates over individual questions.

117.   Plaintiff's claims herein are typical of the Class, since they allege they, and the Class, worked more than forty (40) hours per week.  Yet, Defendants continue to refuse to pay these employees consistent with Arkansas law and the AMWA , making certification under Rule 23(b)(1), (2) and (3) appropriate.

118.   Given the common duties, requirements, and method of compensation by the Defendants, or on its behalf, there are common issues of fact regarding why Defendants refused to compensate Plaintiff, and the Class, in accordance with Arkansas law.

119.   The above common questions of law and fact predominate over any questions affecting only the individual named Plaintiff(s), and a class action is superior to other available methods for fairly and efficiently adjudicating the claims of the members of both AMWA Classes.

120.   The class members have no interest in individually controlling the prosecution of separate actions because the policy of the AMWA provides a bright-line rule for protecting all non-exempt employees as a class.  To wit: "It is declared to be the public policy of the State of Arkansas to establish minimum wages for workers in order to safeguard their health, efficiency, and general well-being and to protect them as well as their employers from the effects of serious and unfair competition resulting from wage levels detrimental to their health, efficiency, and well-being." Ark. Code Ann. § 11-4-202.  To that end, all non-exempt employees must be paid for time worked over forty (40) hours per week at a rate of one and one-half (1 ½) times their regular rate. Ark. Code Ann. § 11-4-211.

121.   At the time of the filing of this Complaint, neither Plaintiff, nor Plaintiff's counsel, know of any litigation already in progress by any members of the proposed class concerning the allegations in this Complaint.

122.   Concentrating the litigation in this forum is highly desirable because Defendant(s)

have a significant presence in this County and because Plaintiff, and all proposed Rule 23 class members work, or worked, within Arkansas.

123.    No difficulties are likely to be encountered in the management of this class action.

124.    Plaintiff and her counsel are familiar with the issues raised herein and are adequate Class representatives. Plaintiff(s) and counsel will fairly and adequately protect the interests of the classes.

125.    Plaintiff's counsel is competent to litigate Rule 23 class actions and other complex litigation matters, including wage and hour cases like this one, and to the extent, if any, that they find that they are not, they are able and willing to associate additional counsel.

126.    Prosecution of separate actions by individual members of the proposed classes would create the risk of inconsistent or varying adjudications with respect to individual members of the proposed class that would establish incompatible standards of conduct for Defendant(s).

127.    The Class is so numerous, such that joinder is impracticable, and a Class action is a superior means of resolution.

128.    Within the three (3) years preceding the filing of this Complaint, Defendant(s) have continuously employed at least four (4) employees.

129.    Defendant(s) employ two (2), or more individuals, who engage in interstate commerce or business transactions, or who produce goods to be transported or sold in interstate commerce, or who handle, sell, or otherwise work with goods or materials that have been moved in or produced for interstate commerce, such as vehicles and fuel.

130.    Defendants annual gross volume of sales made or business done is not less than $500,000.00 (exclusive of excise taxes at the retail level that are separately stated) in each of the three years preceding the filing of the Original Complaint.

131.    At all times material herein, Plaintiff(s) have been entitled to the rights, protections,

and benefits provided under the AMWA.

132.    As a direct and proximate cause of Defendants' action, Plaintiff(s), and the class, are entitled to lost wages, attorneys' fees, and costs in excess of $75,000.

**COUNT III**
**ILLEGAL EXACTION**

133.    Plaintiff re-alleges the foregoing as if fully set out herein.

134.    Plaintiff seeks to solely for the benefit of the State of Arkansas and the various political subdivisions thereof, the entry of an Order by this Circuit Court that:

a.      Certifies this case as a class action against Defendants and appointing Plaintiff(s) and their counsel as Representatives of the Plaintiff Class;

b.      Declares that the "under remittance" of state-owed taxes by all of the Defendants who collected the proper amounts of tax monies (without reimbursement of the required amounts of monies being paid by each of these Defendants to the State of Arkansas), as required by statute, constitutes a "public funds" type of "illegal exaction," pursuant to the provisions of Article 16, Section 13 of the State Constitution; and,

c.      Enjoins all of the Defendants to make adequate and reasonable reimbursement of monies owed to the State of Arkansas for overbilling or inaccurately billing of medical services by Defendants and not reported by Defendants, plus interest as ordered by this Court, for, and solely on behalf of, the State of Arkansas, after an accounting has determined the amounts owed to the State of Arkansas by each Defendant named herein, until the date of payment by each Defendant.

135.    The State of Arkansas is the "body politic" that has been legally and properly formed and the entity that has (acting through the Arkansas General Assembly) enacted and

adopted statutes that subsidize medical services, and is represented by the Plaintiff's class.

136. This action is brought by these citizen-taxpayers (solely on behalf of the State of Arkansas), to redress a "public funds" type of illegal exaction suit wherein the Plaintiff's class seek to recover varying amounts of monies that should have been paid to the State of Arkansas by all of the Defendants of payments collected by Defendants under the color of law pursuant to Arkansas State law and local ordinance, but which payments have not been made by such Defendants to the State. Rather, Defendants are private actors acting under color of state law who have unlawfully collected funds from the State of Arkansas through a practice of over and inaccurate billing for medical procedures to the detriment of the State of Arkansas and its taxpayers. Such practice will continue until this Court intervenes. Defendants have failed to file proper returns and have concealed their actions in a furtive and secret manner. As such, any statute of limitations should be tolled, and this Court should declare each Defendant's actions are a continuing exaction and violation of the law.

137. Pursuant to the interpretation given to the provisions of Article 16, § 13 of the Constitution of the State of Arkansas by the Arkansas Supreme, any action brought by citizen-taxpayers on behalf of a state or local "body politic," pursuant to the provisions of Article 16, § 13 of the State Constitution, to recover public funds that have been illegally expended (or, in this case, to recover from each of the Defendants public funds that the State of Arkansas has been, by statute, entitled to receive from all such Defendants, prior to the filing of this action (but which amounts have not been timely and properly paid by the individual Defendants)), is, by its very nature, a class action, as a "public funds" type of "illegal exaction" suit.

138. Plaintiff(s) bring this civil action on behalf of themselves, and on behalf of all other citizen-taxpayers, (who are similarly situated), but only on behalf of the State of Arkansas,

pursuant to the provisions of Article 16, §13 of the Arkansas State Constitution. This "public funds" type of "illegal exaction" has been initiated to contest and enjoin the illegality and unconstitutionality of the established practices of the Defendants in refusing to pay sums owed to the State of Arkansas for taxes collected by Defendants but not remitted to the State of Arkansas.

139.    This action is brought to remedy violation of State, County and Municipal Law in connection with Defendants' misconduct in over and inaccurate billing of medical procedures to the State of Arkansas.

**COUNT IV**
**PIERCING THE CORPORATE VEIL**

140.    Plaintiff(s) reallege and incorporate each allegation above.

141.    This Court should disregard the corporate facades of Defendant, ADC, as there was no compliance with the required corporate formalities of these entities but instead the corporate status of these entities was abused, misused, and disregarded by their principals and agents in order to and for the purpose of perpetuating a fraud and injustice on Plaintiff(s) and others.

142.    At all times pertinent to this litigation, Defendant, Dr. Williams, and his wife Susan Williams, have held themselves out as the principals in charge of the day-to-day management and control of ADC and own either all of the membership interests in ADC or a significant and controlling part of such membership interest. ADC is an alter ego of Defendant, Dr. Williams, and his wife Susan Williams, individually. Upon information and belief, the assets of ADC have been commingled among the Defendants and Defendants have disregarded the contractual, recordkeeping, accounting, and financial obligations of ADC. ADC is thus a sham company utilized by Defendant, Dr. Williams, and his wife Susan Williams, simply as a business name through which they conduct their private business affairs. The corporate veil of ADC should be pierced to prevent Defendant, Dr. Williams, and his wife Susan Williams, and each and all other

principals and agents thereof, from perpetrating a fraud on Plaintiff(s).

143.    This Court should disregard the corporate façade of ADC in order to provide the equitable relief sought in connection with the fraud and injustices perpetrated on Plaintiff(s) by these Defendants.

## COUNT V
## VIOLATION OF ARKANSAS CIVIL RIGHTS ACT/EQUAL PAY ACT

144.    Plaintiff(s) incorporates by reference the foregoing allegations as if set forth here in full.

145.    Defendants' paid Plaintiff, Gardner, less because Plaintiff was a black female than similarly situated white employees or males.

146.    Defendants' unlawful conduct culminated in a variety of tangible employment actions including, but not limited to, a loss of compensation and opportunity to earn additional compensation, a lengthy effective suspension, which also was a significant change to Plaintiff's work assignment and a change in Plaintiff's job responsibilities, and ultimately the constructive discharge of Plaintiff's employment, causing Plaintiff severe mental, emotional, and physical distress.

147.    Defendants' acts and omissions were willful and intentional and were committed with malice and/or a reckless indifference to Plaintiff's protected rights. Accordingly, Plaintiff is entitled to have and recover of the corporate Defendants' punitive damages in amounts to be proved at trial.

## VI.
## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff, **JORDANA GARDNER,** herein requests a jury trial on all issues so triable; pray for compensatory, punitive, and liquidated damages in excess of $750,000, for each; prays for temporary and permanent injunctive relief; prays that the Court grant class

certification; that the Plaintiffs be granted attorneys' fees and costs; and, for all other just and proper relief to which she is so entitled.

Respectfully submitted,

Luther Oneal Sutter, Esq., ARBN 95031
Lucien R. Gillham, Esq., ARBN 99199
**SUTTER & GILLHAM, P.L.L.C.**
1501 N Pierce, Ste. 105
Little Rock, AR 72207
501/315-1910 – OFFICE
501/315-1916 – FACSIMILE
*Attorneys for the Plaintiffs*

By: /s/ Luther Oneal Sutter
     Luther Oneal Sutter, ARBN 95031
     Luther.sutterlaw@gmail.com

By: /s/ Lucien R. Gillham
     Lucien R. Gillham, ARBN 95031
     Lucien.gillham@gmail.com

ELECTRONICALLY FILED
Pulaski County Circuit Court
Terri Hollingsworth, Circuit/County Clerk
2024-Apr-23 12:02:39
60CV-24-3257
C06D06 : 2 Pages

### IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS
### CIVIL DIVISION

**JORDANA GARDNER, Individually and on behalf of herself,**
**as well all others similarly-situated employees**                    **PLAINTIFFS**

**vs.**                    **CASE NO. 60CV-24_____**

**DR. ALONZO WILLIAMS, SR.; SUSAN WILLIAMS**           **DEFENDANTS**
**SUZETTE SIEGLER; SELMA KEEFER; COVENANT**
**SURGICAL PARTNERS, INC., d/b/a COVENANT PHYSICIAN**
**PARTNERS; ARKANSAS DIAGNOSTIC CENTER, P.A. JOHN DOES 1-10.**

### <u>JOHN DOE AFFIDAVIT OF PLAINTIFFS' COUNSEL</u>

Comes now, counsel for the Plaintiff, **SUTTER & GILLHAM, P.L.L.C.,** and, for this

Affidavit, being competent to testify, attest that the statements below are true and accurate:

1.       I am a licensed attorney in good standing in the State of Arkansas and am the

Partner and owner of **SUTTER & GILLHAM, P.L.L.C.,** who are the attorneys of record for the

Plaintiffs in the attached Complaint.

2.       Plaintiffs have made reasonable effort to obtain the identity of John Does 1-10, &/or

individuals who are likely to be additional Defendants in the above-captioned case.

3.       The identities of all individuals and entities are presently unknown.  Plaintiffs

hereby designate John Does 1-10 for the purpose of tolling the statute of limitations pursuant to

ACA § 16-56-125.

4.       John Does 1-10 are currently unknown persons who are believed to be medical

care providers, insurance carriers or other persons with interest in and to the circumstances of this

matter who are presently unknown to the Plaintiffs.

5.       The pseudo-names will continue to be named &/or submitted with the actual names

upon further discovery, if applicable.

**FURTHER AFFIANT SAITH NAUGHT.**

## <u>VERFICIATION</u>

I, Luther Oneal Sutter,  do hereby certify and state, under oath, that the above facts contained herein are true and correct to the best of my knowledge and belief.

_/s/ Luther Oneal Sutter_
Luther Oneal Sutter, Esq.
_Counsel for Plaintiff_

## <u>ACKNOWLEDGMENT</u>

State of Arkansas          )
                           ) SS.
County of Pulaski          )

Subscribed and sworn before me, a Notary Public, this 23rd day of April, 2024.

ELIZABETH ANN HODGES
Notary Public-Arkansas
Lonoke County
My Commission Expires 09-14-2031
Commission # 12716016

Notary Public

My commission Expires:

9/14/31